The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 49 year old widower, who has been employed by defendant-employer for the last twenty-five years. At the time of his injury he was an Equipment Operator II responsible for operating such heavy equipment as trucks and forklifts requiring extensive lifting of as much as seventy pounds, bending, twisting and climbing associated with setting up railroad cars for containers as well as getting on and off the same equipment, which requires the type of strength, mobility and agility he no longer has because of the permanent back injury giving rise hereto; but rather, is only capable of the type of limited, less than light work described in the most recent functional capacity evaluation that he underwent in May of 1996 that does not require frequent walking or standing and defendant-employer has provided in the form of the essentially sedentary clerical job that plaintiff has answering the telephone and logging in trucks.
2. Prior to the injury giving rise hereto plaintiff did not suffer hip or gastrointestinal problems or problems with impotence or other urological problems, including ones with difficulty voiding and resulting bladder retention or uncontrolled hypertension requiring medication or depression.
Although he did suffer back problems from an earlier back injury requiring him to be treated conservatively by an orthopedic surgeon, Dr. Nance, and resulting in him being out of work for almost two and a half months; with the same treatment plaintiff recovered from his back problems enabling him to return to his regular Equipment Operator II job in mid-August, which necessarily required the type of extensive heavy lifting, bending, twisting or climbing he can no longer due, and to continue regularly working until injuring himself two months later.
3. Because the warehouse was short of help on November 17, 1993 plaintiff was assigned to put paper down on the floor of the paper house to allow large bales of paper to be stacked in there by forklift. While bent over laying paper on the floor of the paper house plaintiff sustained the admittedly compensable injury by accident that was subject of the Industrial Commission's prior Award herein when he was struck from behind by a forklift not only sustaining severe crush injuries to his chest and abdominal areas resulting in a rupture of his left hemidiaphragm requiring him to undergo an exploratory laparoscopy initially and then an open repair of the same rupture where the stomach cavity (peritoneum) was opened and the enclosed organs explored, multiple fractures of the metatarsals of his left foot and bilateral pubic rami fractures as well as fractures of the sacrum; but the permanent back injury responsible for the chronic incapacitating pain that prevents plaintiff from returning to his regular Equipment Operator II job and (is responsible) for the majority of the migratory symptoms he experiences.
4. Due to his chronic incapacitating pain, resulting loss of function and associated stress and thus as a direct and natural result of the same injuries plaintiff has not only understandably become depressed and had difficulty sleeping requiring him to receive medical treatment, including medication, for the same condition; but developed uncontrolled hypertension similarly requiring medical treatment, including as part thereof, antihypertensive medication.
5. As a direct and natural result of the severe crushing injuries to his chest and abdominal area and the corrective surgery necessitated thereby plaintiff not only continues to experience chest and abdominal pain in addition to the chronic incapacitating pain from his permanent back injury, but has suffered gastrointestinal problems requiring medical treatment, which has primarily consisted of various anti-acids such as Zantac, Carafate and Prilosec.
6. Although he suffered benign hypertrophy (enlargement) of his prostate prior to the involved injury; plaintiff had not experienced any urological problems involving difficulty urinating and resulting bladder retention; however, as a direct and natural result of his pelvic fractures temporarily aggravated his existing, but asymptomatic, enlarged benign hypertrophic prostate resulting in him experiencing temporary difficulty voiding and associated bladder retention requiring referral to a urologist (Dr. Russell) for evaluation and treatment and with treatment those temporary problems subsequently resolved.
Although with age plaintiff will likely experience similar problems in the future; those will be due to his underlying benign hypertrophic prostate independent of the pelvic fracture sustained on the date in question, which only temporarily aggravated that condition requiring medical treatment and with medical treatment the condition subsequently resolved.
7. As a direct and natural result of his pelvic fractures plaintiff also developed problems with impotence, but has declined treatment for the same condition to this point.
8. Plaintiff's ruptured diaphragm was repaired by Dr. Goudarzi, a surgeon, who initially evaluated and treated the gastrointestinal problems that plaintiff developed as a direct and natural result of the same crushing injuries to his chest and stomach requiring surgery, including as part thereof, prescribing Zantac at the time of his discharge, as well as have him subsequently undergo a diagnostic endoscopy because of those complaints during the course of which plaintiff was found to have some gastritis and inflammation of the stomach as well as a suture material that was removed from his gastric fungus, but after a dispute with plaintiff about his condition and treatment referred him to Dr. Singh for his complaints, including as part thereof, the uncontrolled hypertension that he developed as a direct and natural result of the involved injury.
9. As a result of the same gastrointestinal problems plaintiff was also seen by Dr. Meyer, a specialist in that field, who subsequently referred him to a cardiologist, Dr. Helak, for an evaluation to determine whether his chest pain was due to cardiac problems or attributable to the involved injury and Dr. Helak subsequently had plaintiff undergo a diagnostic IV Persantine Thallium stress test, which was normal excluding a cardiac basis for those symptoms; but rather, they were either musculoskeletal or gastrointestinal in nature and due to his November 17, 1993 injury.
10. Plaintiff's orthopedic injuries were initially treated by Dr. Boyd, but defendant-employer subsequently referred him to another orthopedic surgeon with whom it was familiar, Dr. Getz. Ultimately defendant-employer allowed plaintiff to return to Dr. Boyd when Dr. Getz was unsuccessful in motivating him to become more functional.
11. In order to determine whether plaintiff's continued leg complaints were either vascular in origin or due to the involved injury Dr. Boyd subsequently referred plaintiff to Dr. Scott for an angiogram, which was normal excluding a vascular basis for the same symptoms; but rather, they were the result of his injury.
12. In order to determine whether plaintiff's back injury could be treated surgically thereby improving his chronic incapacitating pain Dr. Boyd also referred him to a neurologist for evaluation, Dr. Melin, who does not recommend surgery, and he subsequently referred plaintiff to a neurosurgeon for a second opinion, Dr. Bernard, and he concurs because plaintiff's condition cannot be improved by corrective surgery and, after undergoing extensive conservative treatment, the only remaining viable treatment option for him is to undergo the type of pain management program recommended by Dr. Boyd.
In her contentions plaintiff's counsel indicates that defendant-employer has now agreed to this recommendation since hearing, which the undersigned would have otherwise ordered because it is reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with plaintiff's permanent back injury by enabling him to better deal or cope with the same pain thereby improving his function. Defendant-employer has also since hearing agreed to allow Dr. Snyder to assume responsibility for the other non-orthopedic problems that plaintiff experiences as a result of the injury by accident giving rise hereto, including as part thereof his hypertension and gastrointestinal problems.
13. As defendant-employer authorized Dr. Boyd to be one of plaintiff's treating physicians, it is not only responsible for his treatment, but any of the other physicians to whom Dr. Boyd subsequently referred plaintiff for evaluation and/or treatment, including Dr. Russell, Melin, Bernard and Scott, each of whose evaluations and/or treatment was reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with the involved injury either by providing specific treatment, determining the viable treatment modalities available or whether a particular condition was or was not due to the same injury under the circumstances more fully described in the above findings of fact.
Further defendant-employer has denied liability for plaintiff's hypertension, continued gastrointestinal problems, depression and urological problems; therefore, it has no right to control or dictate either the physicians by whom he was treated or course of treatment received; but rather, plaintiff was free to select his own physician and course of treatment so long as the same was reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with his disabling injury, which each of the physicians that plaintiff has seen since his injury was, including as part thereof, the chiropractor, who provided temporary relief, but not the ophthalmologist because there is no evidence that the condition for which he was seen was related to the injury by accident giving rise hereto.
14. Although still remaining in need of the type of pain management recommended by Dr. Boyd, which defendant-employer has apparently agreed to authorize since hearing, as well as medical treatment for the non-orthopedic problems that he still suffers from the involved injury; by December 11, 1995 plaintiff had reached maximum medical improvement and/or the end of the healing period from and following the permanent back injury sustained on November 17, 1993, at which time he retained a fifteen percent permanent partial disability of the back as a result of the same injury manifested by his chronic incapacitating pain and because of it is unable to return to his regular Equipment Operator II job.
15. Although in the interim since returning on a part time basis in March and full time basis in May plaintiff has attempted to continue the previously described essentially sedentary clerical job answering the telephone and logging in trucks despite his incapacitating pain; because of the same pain he has experienced periods when he has been unable to work and earn wages not only forcing him to exhaust 209 hours of sick leave and 403 and 1/2 of annual leave in order to be paid, but to take 454 hours of leave without pay for which he is entitled to receive workers compensation benefits during those same periods when he was unable to work.
Because the accumulated sick leave and vacation benefits were ones that he earned and are not tantamount to workers compensation benefits for the reasons stated in the Estes v. N.C. StateUniversity case (infra) defendant-employer is not entitled to a credit against the compensation benefits otherwise due for these same periods; but can satisfy its obligation under the Workers' Compensation Act for those periods by reinstating the accumulated sick leave and vacation time that plaintiff was forced to use.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. By December 11, 1995 plaintiff had reached maximum medical improvement and/or the end of the healing period from and following the permanent back injury sustained on November 17, 1993, at which time he retained a fifteen percent permanent partial disability of the back as a result of the same injury entitling him to 45 weeks of compensation at a rate of $326.05 per week commencing as of December 11, 1995. G.S. 97-31(23).
2. In the interim as a result of the chronic incapacitating pain from his back injury plaintiff has experienced periods when he has been unable to work and earn wages not only forcing him to exhaust 209 hours of sick leave and 403 and 1/2 hours of vacation time, but to take 454 of leave without pay entitling him to be compensated for his resulting temporary total disability during these same periods at a rate of $326.05 per week; provided, however, defendant-employer can satisfy its obligation for the periods when plaintiff was forced to take sick leave and accumulated vacation by reinstating those same benefits, which defendant-employer is not entitled to set off against the workers compensation benefits otherwise due under the present Award for the reasons stated in Estes v. N.C. State University,102 N.C. App. 52, 401 S.E.2d 384 (1991).
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant is obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, including as part thereof the treatment provided by the physicians named in the above findings of fact.
* * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff, on account of his temporary total disability, compensation at a rate of $326.05 per week during the above-described periods when plaintiff was temporarily totally disabled and forced to exhaust his accumulated sick leave and vacation benefits as well as to take leave without pay. Such compensation having accrued the same shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved; provided, however, defendant can satisfy its obligation under this Award for the periods that plaintiff was forced to take accumulated vacation and sick leave by reinstating those same benefits.
2. Defendant shall pay plaintiff, on account of his fifteen percent permanent partial disability of the back, 45 weeks of compensation at a rate of $326.05 per week commencing as of December 11, 1995. Such compensation having accrued the same shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
3. A reasonable attorney fee in the amount of twenty-five percent of the compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly thereto.
4. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, including as part thereof the treatment provided by the physicians named in the above findings of fact, when bills for the same are submitted in accordance with the Industrial Commission rules.
5. Defendant shall bear the cost.
 S/ __________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _____________________ THOMAS J. BOLCH COMMISSIONER
S/ _____________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/rst